IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

REBECCA KAY HEADRICK,　　　　　)

　　　　PLAINTIFF,　　　　　　　　)

VS.　　　　　　　　　　　　　　　)　　　　CV-02-H-2443-NE

SANMINA-SCI CORPORATION,　　　　)

　　　　DEFENDANT.　　　　　　　　)

**ENTERED**

JAN 2 9 2004

## MEMORANDUM OF DECISION

The court has before it the November 12, 2003 motion of
defendant Sanmina-SCI Corporation for summary judgment.  Pursuant
to the court's November 17, 2003 order, the motion was deemed
submitted, without oral argument, as of December 15, 2003.

### I. Procedural History

Plaintiff Rebecca Kay Headrick commenced this action on
October 3, 2002 by filing a complaint in this court alleging that
her employer, Sanmina-SCI corporation, is liable for
discriminatorily denying her promotions and for subjecting her to
disparate treatment because of her gender, female.  (See Compl.
Counts I, II.)  Plaintiff contends that defendant's acts
constitute gender discrimination under Title VII.  (See id.; see
also Compl. ¶ 2.)  Defendant's November 12, 2003 motion for
summary judgment asserts that the Plaintiff has failed to
establish a prima facie case for the above-listed claims.  (See

generally Def.'s Mot. Summ. J.)

On November 12, 2003, defendant submitted evidence[1] in support of the motion for summary judgment and also on November 12, 2003, defendant filed a supporting memorandum of law. Plaintiff submitted evidence[2] in opposition to the motion for summary judgment on December 8, 2003 and filed a brief in opposition to the motion on December 15, 2003.  On January 5, 2004, defendant Sanmina-SCI Corporation filed a reply brief in further support of its motion for summary judgment.  All of these briefs, along with the submitted evidence, have been considered and evaluated in making the judgment contained herein.

**II. Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[1] Defendant submitted the August 20, 2003 deposition of plaintiff Rebecca Kay Headrick with exhibits; the affidavit of James B. Oakes dated November 10, 2003; the affidavit of Francis X. Henry dated November 10, 2003; the affidavit of Nancy Bates dated November 12, 2003; the affidavit of Steven C. Peters dated November 12, 2003; and plaintiff's answers to defendant's first interrogatories and request for production of documents dated April 8, 2003.

[2] Plaintiff submitted the August 20, 2003 deposition of plaintiff Rebecca Kay Headrick; plaintiff's answers to defendant's first interrogatories dated April 8, 2003; and plaintiff's responses to defendant's first request for production of documents dated April 8, 2003.

material fact and that the moving party is entitled to judgment
as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322
(1986).  The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact.  <u>See</u> <u>id.</u> at 323.  Once the moving party
has met its burden, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by its own affidavits, or by the
depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue
for trial.  <u>See</u> <u>id.</u> at 324.

The substantive law will identify which facts are material
and which are irrelevant.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 248 (1986).  All reasonable doubts about the facts
and all justifiable inferences are resolved in favor of the non-
movant.  <u>See</u> <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115
(11th Cir. 1993).  A dispute is genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  <u>Anderson</u>, 477 U.S. at 248.  If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted.  <u>See</u> <u>id.</u> at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a

4

simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

---

[3] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.  However, the motion before the court this day is unique in the sense that the Plaintiff often states her evidence for discrimination in the form of perception and subjective belief, unsupported by actual verified fact.  Therefore, where the Plaintiff disputes facts based on unverified evidence supporting the stated beliefs, the court states the facts as actually found to be verified in the record.  See Turlington v. Atlanta Gas Light Co., 135 F.2d 1428 (11th Cir. 1998); see also Elliott v. Group Medical & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983); see also FED R. EVID. 602 (stating that "a witness may not
(continued...)

Steven Peters worked as an intelligence officer with the United States Navy for three years.  (See Peters Aff. ¶ 2.) After his tour of duty with the Navy, Peters worked for twelve years at General Dynamics Corporation as a Human Resource generalist, during which time he progressed from an intern position to supervisor and then to human resource manager.  (See id.)  After achieving the rank of human resource manager at General Dynamics Corporation, Peters was hired by SCI in 1981 in the capacity of professional recruiter with additional responsibilities to monitor "most aspects" of employee benefits.[4] (See id. at ¶ 1.)  In 1985, Peters became the Administrator for SCI's 401(k) plan, stock purchase plan, and pension plan.  (See id.)  Peters continued to gain more responsibility and in 1992 was appointed as Supervisor of Employee Benefits.  (See id.) From 1996 through 2000, he was the Human Resources Manager of

_____

[3](...continued)
testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.").

[4] Peters was hired by SCI in 1981 at a salary of $36,000. (See id. at ¶ 4.)  The primary focus of his duties was to recruit salaried employees, including management, engineers, and other professional employees whose skills were essential to SCI.  (See id.)  Since at the time he was hired competition for skilled personnel was fierce, recruiting efforts were extremely important to SCI.  (See id.)  Therefore, Peters was able to command a relatively high salary when he was hired in 1981.  (See id.)
   The Plaintiff states in her deposition that Peters had been with SCI " several years" longer than herself.  (See Dep. of Rebecca Kay Headrick 99.)

6

Plants 2, 3, and 13, totaling approximately 7000 employees.[5]
(See id.)  In December 2001, Peters became the Human Resources
Manager of Plants 1 and 13.  (See id.)  When SCI merged with
Sanmina in May of 2002, Peters was transferred to San Jose,
California where he was promoted to Director without a pay
increase.  (See id.)  Peters returned to Huntsville in June of
2003 where he now works under the supervision of Nancy Bates, the
Sanmina-SCI Human Resources Manager of the Southeast Region.
(See id.)  The Plaintiff asserts that she is similarly situated
to Steven Peters in her claim for gender discrimination.  (See
Compl. ¶ ¶ 14-18, 25, 28; see also Pl.'s Mem. in Opp'n. to Summ.
J. at 9.)

　　　Kirk Scruggs graduated from Georgia Tech in 1969 with a
Bachelor of Science degree in Industrial Management.  (See Peters
Aff. ¶ 3.)  Scruggs was hired by SCI in 1981, from which point on
he served as a recruiter; at the time he was hired, he had six
years of experience as a professional recruiter for salaried
exempt employees for Fortune 1000 companies.[6]  (See id.) Scruggs

---

[5] When Peters was initially put in charge of these three
plants, he was not given a salary increase and was not promoted
until November 6, 1996.  (See id. at ¶ 9.)  Peters asserts that
it is the policy of SCI to withhold pay increases to employees
placed in new positions until that employee could prove adequate
performance in the new position.  (See id. at ¶ 12.)

[6] As a recruiter, Scruggs' duties were comparable to Peters'
duties, in that he performed professional recruiting and Human
Resource generalist work with salaried employees.  (See Bates
(continued...)

7

remained an Administrator for 14 years until 1995 when he was promoted to Supervisor.  (See Bates Aff. ¶ 10.)  Scruggs worked in the capacity of Supervisor until 2001 when he was terminated as part of a reduction in force, which was the result of the merger of SCI with Sanmina Corporation.  (See id.)  The Plaintiff asserts that she is similarly situated to Kirk Scruggs in her claim for gender discrimination.  (See Dep. of Headrick 98.)

Plaintiff Rebecca Headrick graduated from the Mississippi University for Women in 1980 with a degree in business administration.  (See Def.'s Ex. 1 to Dep. of Headrick 6.) She attended the Life Underwriters Training Council in 1986, where she passed a course of study in insurance and benefits.  (See id.)  In 1989, Plaintiff Headrick was hired by SCI as a benefits clerk/insurance clerk.[7]  (See Dep. of Headrick 19-20.)  For purposes of attaining this position, plaintiff submitted a resume and completed an application for employment with SCI.  (See generally Def.'s Ex. 1-2 of Def.'s Mem. for Summ. J.)  On those documents, the Plaintiff indicated that she had some experience

_____

[6](...continued)
Aff. ¶ 10.)

[7] Prior to SCI's acquisition by Sanmina, the employment classification of "clerk" was an entry-level position.  Employees assigned to this position were paid on an hourly basis.  (See Bates Aff. ¶ 4.)  Therefore, Headrick's starting salary was approximately $13,520 per year.  (See id. at ¶ 12.)  The duties of the clerks were to enroll people in the health plan and clean up records.  (See Dep. of Headrick 22.)

working with personnel benefits.  (See generally id.)  At the
time of her application with SCI, plaintiff indicated that she
was working at Old Northwest Agents in an office support capacity
and that she had been working in that capacity at Old Northwest
for approximately three weeks.  (See Def.'s Ex. 1 at 3; see also
Dep. of Headrick 7.)  Plaintiff Headrick noted on her employment
application that she had worked at three other insurance
companies: Northwestern Mutual, Alamogordo Insurance and Surety,
and Prudential.  (See Def.'s Ex. 1 at 3.)   While there is no
dispute that plaintiff was indeed employed by these companies,
there is some confusion in the record as to why she left certain
employers.[8]  Regardless, there is no dispute that before she

---

[8] Headrick's employment application with SCI noted that she
left her employment at Northwestern Mutual due to "re-
organization."  (See Def.'s Ex. 1 at 3.)  In her deposition,
however, Headrick states that she left Northwestern Mutual
because of a "difference of opinion about an ethical opinion."
(Dep. of Headrick 10.)  She then back-tracks and states that
reorganizing the Northwestern office was "part of the reason that
I was leaving that is true."  (Id. at 13.)  Plaintiff did not
mention in her answers to interrogatories that part of the reason
she left Northwestern was reorganization of the office; in fact,
she says in her deposition that she "didn't remember" the
reorganization at the time of the interrogatories.  (Id. at 14.)
     Headrick's employment application with SCI also noted that
she left employment with Prudential in 1985 because Prudential
closed it's Alamo office.  (See Def.'s Ex. 1 at 3.)  However, in
her deposition Headrick adds that she left Prudential not only
because the office closed, but also because of "an ethical
situation."  (See Dep. of Headrick 15.)  In her interrogatories,
Headrick had stated that she left Prudential "because individuals
in the El Paso office were involved in what I considered to be
unethical insurance practices that I wanted no part of."  (See
id. at 16.)

9

began working for SCI, Headrick "had not worked in any job that was a coordinator or supervisor or manager of benefits" nor had she earned as much money as SCI paid her for the entry level clerk position.[9]  (Dep. of Headrick 18-9.)

Plaintiff Headrick was promoted to the position of Administrator in the Benefits Department at SCI sometime between June of 1990 and January of 1991.  (Id. at 30.)  During that time, Headrick received outstanding reviews from her supervisor, Mr. Fran Henry,[10] which later deteriorated to the mid range of performance evaluations.  (See id. at 30-2; 38.)  At the same time, Headrick complained to Mr. Henry that he "didn't pay the women the same amount of money or gave [sic] them the same due that he did the men."  (Id. at 33.)  Plaintiff testified that she believed Mr. Henry discriminated against women in "the way a lot of men are [sic]" (Id. at 35) by failing to give the women "credit where credit was due."  (Id. at 36.)

--------

[9] Despite the fact that Headrick had never earned as much money as she did as an entry level clerk for SCI, she testified that she thought the job offer she received from SCI was "low." (See id. at 25.)  She accepted the job, she testified, because she "thought it was the beginning of an opportunity . . . a chance."  (Id. at 24.)  Plaintiff did not believe that her starting job offer was discriminatory on the basis of gender. (See id. at 26.)

[10] Francis X. "Fran" Henry was the Vice President of Human Resources at SCI during most of Headrick's period of employment at SCI.  In his capacity as Vice President, Mr. Henry served also as manager of SCI's Human Resources Department.  (See id. at 27-8.)

Then, sometime in 1992, plaintiff alleges that she was discriminatorily passed over for a promotion to Supervisor in the Benefits Department, and as a result lost $7963 in wages. (See Pl.'s Ans. to Int. 13.) The Plaintiff testified that she believed she was the most qualified person to take over the available position at the time, but it was instead awarded to Steven Peters. (See Pl.'s Ans. to Int. 21; see also Dep. of Headrick 245.)

Then in January 1997, the Plaintiff was indeed promoted to Supervisor of the Benefits Department. (See Bates Aff. ¶ 8.) During the time she maintained that position, Headrick was the only Benefits Supervisor employed by SCI. (See id.) While Headrick was given a number of opportunities to move out of the benefits area into a less specialized area, she always declined these opportunities.[11] (See id.) Plaintiff also continually resisted Mr. Henry's suggestions that she "spend more time at the

---

[11] In SCI's Human Resources Department there were two basic types of work - "generalist" work and more specialized staff support work. (See Bates Aff. ¶ 5.) "Generalists" were responsible for all phases of employment practices and usually worked in a plant. (See id.) "Specialists" were focused on more narrow duties, i.e. compensation, benefits, 401(k), etc., and worked in an office environment. (See id.) Because generalists had more opportunity to take on greater responsibility than specialists, their opportunity for advancement was generally greater. (See id.) The one exception to this rule was the skilled recruiters for salaried and professional employees, because of their great importance to the growth and success of the company. (See id.)

plants."[12]   (Henry Aff. ¶ 5.)   She also declined at least three
opportunities to move into SCI plants as an HR generalist, opting
instead to remain in employee benefits.[13]   (See id.)

Sometime in September of 1998, Headrick was offered a
position as a Human Resources Representative at "the plant down
on South Parkway," or Plant 2/3/13.[14]   (Dep. of Headrick 184-86.)
Headrick turned down this opportunity, and another woman,
Claudette McRae, was offered and accepted the position.   (See id.
at 186-88.)   The Plaintiff testified that she refused the
promotion in 1998 because the offer itself was "the very basis of
[her] complaint [of gender discrimination]" (Id. at 164) and she

----

[12] In her deposition, Headrick admits that Mr. Henry told
her that she should spend more time out of the office and more
time in the plants.   (See Dep. of Headrick 104.)   Plaintiff
recognizes that the same criticism of her failure to spend time
at the plants was noted in a performance review dated July 15,
1997.   (See id. at 103.)

[13] When asked in her deposition if she had ever turned down
opportunities to do Human Resource work out in the plants of SCI,
Headrick responded in the affirmative.   (See Dep. of Headrick
106.)   In fact, plaintiff recalls three specific opportunities
that she turned down.   (See id.)

[14] Plaintiff states that the job offer was for the position
"previously held by Steve Peters." (Pl. Ans. to Int. 17.)
However, the facts bear that Headrick is incorrect on this point
and Headrick's unsupported belief cannot be used by this court in
considering the motion for summary judgment.   Peters did not
leave Plant 2/13/30 until 2000.   (Peters Aff. ¶ 9.)   In fact, the
vacant position at this time was assistant to the Human Resource
Manager, before held by Jim Oakes.   (See id.)   At the time Oakes
initially took the assistant job, he was not given an attendant
increase in pay and in fact was required to take a demotion.
(See Henry Aff. ¶ 9; Oakes Aff. ¶ 3.)

"refused to accept the discrimination" (id. at 165).  Plaintiff believes that since she was not offered a raise in compensation and a new title, the offer was discriminatory on the basis of gender since she believes males were promoted with an attendant increase in salary.  (See id.)  Headrick testifies that the offer to McRae of the position was also discriminatory because it did not produce an attendant increase in salary.  (See id. at 190-91.)

Then in 1998, Headrick served as an interim Human Resources representative at a plant SCI had recently acquired from Intergraph.  (See Bates Aff. ¶ 9.)  While the Plaintiff characterizes herself as a generalist at this time, no one else in the company so considered her.[15]  (See id.; see also Dep. of Headrick 113-14.)  Headrick's duties mostly involved transitioning employees' benefits into SCI's system.  (See Bates Aff. ¶ 9; see also Dep. of Headrick 114.)  Other than the few interim months spent as a Human Resource representative, Headrick had no general human resources experience.  (See Bates Aff. ¶ 9.)  She did not have any responsibilities in the areas of the Savings Plan, the Employee Pension Plan, or the Employee Stock Purchase

---

[15] When asked in her deposition if she was considered to be a generalist in the human resources field, the Plaintiff responded affirmatively.  (See Dep. of Headrick 113-14.)  However, when asked if she acted more like a specialist in the benefits area, plaintiff also responded in the affirmative.  (See id. at 114.)

Plan.  (See id.)  Nevertheless, Headrick was offered this position on a permanent basis, which she turned down.  (See Dep. of Headrick 208-09.)  Plaintiff felt that any permanent movement by her to this position should come with an increase in salary. (See id. at 210-11.)  She believes that the promotion of Jim Oakes to the position she turned down was gender discriminatory because it involved an attendant increase in pay and change in title.[16]  (See Dep. of Headrick 197-99.)

In early 2001, the Plaintiff was not promoted to take an available position at Plants 27/30 when Jim Oakes vacated the job and moved to Virginia.  (See id. at 213-14.)  Nevertheless, plaintiff again turned down this position because it was offered without an attendant promotion or raise in pay, and the job went to Claudette McRae.  (See id. at 214-17.)  Then in November of 2001, when McRae left the position, Tom Avery was promoted to the position over Headrick.  (See id. at 275-76; 238-39.)  Finally, the Plaintiff asserts that she was discriminatorily denied a promotion when an available position of Human Resource generalist

---

[16] The facts bear out that the Plaintiff is mistaken on this point.  When Oakes was transferred to manage human resources, he was not promoted to Manager until more than a year after the transfer.  (See Oakes Aff. ¶ 4.)  He was not given an increase in pay or promotion at that time.  (See id.)  In fact, Oakes was not promoted until 18 months after he was reassigned to Plants 27/30. (See id. at ¶ 5.)  When plaintiff was presented with these accurate facts during the course of her deposition, she admitted that those facts were "different than what I thought."  (Dep. of Headrick 198-99.)

was given to Steve Peters over herself at Plant 1.  (<u>See</u> Dep. of Headrick 246.)

Throughout her tenure with SCI, Plaintiff Headrick compared her salary to the salaries and situations of Peters and Scruggs (because these were the male employees she "most identified with") (<u>id.</u> at 98) and claims that based on these comparators she was, on average, underpaid by 44% over the last ten years.  (<u>See</u> Pl.'s Ans. to Int. 13.)  Other than Peters and Scruggs, the Plaintiff has no evidence that similarly situated male employees received greater compensation than she did.  (<u>See</u> <u>generally</u> Dep. of Headrick.)  Rather, plaintiff "assumes" that other Supervisors at SCI were paid more than her, but she "doesn't know" if this was factually true.  (<u>Id.</u> at 92.) While Headrick continually pushed her manager for a pay increase, she never complained to anyone higher in management about her salary, nor did she file a grievance.  (<u>See</u> <u>id.</u> at 85-6; 89-90.)  Likewise, Headrick never filed a complaint with management of gender discrimination prior to her filing of a charge of gender discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on April 22, 2002.[17]  (<u>See</u> Dep. of Headrick 130; <u>see</u> <u>also</u> Henry Aff. ¶

---

[17] Plaintiff notes in her deposition that she never did anything about her alleged personal discrimination except bring it to the attention of Fran Henry, though in retrospect she believes she should have done more.  (<u>See</u> Dep. of Headrick 130.) Despite Headrick's compliant of gender-based compensation schemes, SCI Compensation Supervisor Nancy Bates had performed
(continued...)

14.)  Furthermore, it is not disputed that several employees, both male and female, desired greater compensation; by reputation and practice, SCI was known for holding salaries at the low end of the labor market.  (See Bates Aff. ¶ 14.)  This is likely due to the fact that SCI never had a rigid pay classification; rather, employee compensation was based on skill, prior salary, and service with SCI.[18]  (See id. at ¶ 15; see also Peters Aff. ¶ 8.)

Finally, in May 2002, plaintiff Headrick was terminated as part of a reduction in force when SCI merged with Sanmina Corporation.[19]  (See Compl. ¶ ¶ 41-3.)  The plaintiff believes

---

[17](...continued)
wage and salary surveys and investigations to determine whether SCI's salary progression was competitive with other employees in relevant labor markets.  (See Bates Aff. ¶ 15; see also Peters Aff. ¶ 8.)

[18] When SCI's former female Benefits Supervisor was replaced by a less qualified woman, the replacement was hired on at a salary of almost less than half what the former supervisor had earned.  (See Dep. of Headrick 145-46.)  Plaintiff acknowledged that this difference in salary was not discriminatory because "[McCee] came from a different background than [McCloud.]" (Id. at 153-54.)  Plaintiff also acknowledged that differences in background justified salary differentials "whether it's a comparison of a woman's salary with another woman's salary or a woman's salary with a man's salary." (Id.)

[19] The merger of SCI with Sanmina Corporation led to a duplication of functions and services.  The Plaintiff herself acknowledges that as a result of the merger her "benefits job was going to be going away . . . [and] there was going to be changes . . . and a difference structure for HR." (Dep. of Headrick 102.)  It is in fact undisputed that as a result of the merger a number of salaried employees in SCI's Human Resource department
(continued...)

16

that her termination, though admittedly part of a reduction in force, was the result of gender discrimination.[20]   (See id.)

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint claims: (1) gender discrimination in the form of failure to promote under Title VII; and (2) disparate treatment under Title VII.   (See Compl. Counts I and II.) Defendant's motion for summary judgment asserts that Plaintiff has failed to establish a *prima facie* case for either of the counts claimed in the Complaint against defendant Sanmina-SCI Corporation.

### A.  Gender Discrimination Under Title VII

#### 1.  Failure to Promote
##### a.  Plaintiff's Failure To Make a *Prima Facie* Case

Count I of Headrick's complaint alleges that she was discriminatorily denied promotions because of her sex, female, in violation of Title VII of the Civil Rights Act.[21]   Title VII of the Civil Rights Act provides than an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[19](...continued)
lost their jobs.  (See Bates Aff. ¶ 24.)

[20] The facts show that following the announcement of the merger, six males and four females were terminated from within the human resource department.  (See Bates Aff. ¶ 26.)

[21] Paragraph 38 of the Plaintiff's complaint alleges that Sanmina-SCI "failed to promote and/or consider [Plaintiff] for promotion based on her sex, female."  (Compl. ¶ 38.)

because of such individual's race, color, religion, *sex*, or national origin. . ." 42 U.S.C. § 2000e-2(a)(1) (1994) (emphasis added).  Title VII has been interpreted to specifically allow for claims of failure to promote based on discriminatory gender practices.

In *Batey v. Stone*, the Eleventh Circuit noted that a plaintiff may make such a claim where s/he first establishes a *prima facie* case.  24 F.3d 1330, 1333 (11th Cir. 1994).  A *prima facie* case of failure to promote by the use of circumstantial evidence[22] is established where the plaintiff shows: (1) that she belongs to a protected class; (2) that she applied for and was qualified for the position for which the employer was seeking applicants; (3) that she was denied the promotion; and (4) that another equally or less qualified individual outside of the protected class received the promotion or that the position remained open.  See id. at 1334 n. 11; see also Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) (citing Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999)); see also White v. Wells Fargo Guard Serv., 908 F.Supp. 1570, 1582 (M.D. Ala. 1995).

In the instant case, it is undisputed that Headrick belongs to a protected class.  However, the defendant asserts that the

---

[22] The Plaintiff has no direct evidence of gender discrimination based on failure to promote.  (See Pl.'s Brief in Opp. to Summ. J. 7.)

Plaintiff is unable to make a showing that she was equally or more qualified than those men (and women) who actually obtained the promotions in question.

### i. The 1992 Benefits Supervisor Position[23]

Plaintiff alleges that she was discriminatorily denied an appointment to manage SCI's Benefits Department in 1992.[24] According to the Plaintiff, when the benefits position became available, she "was the most qualified person in the company to fill the open position," (Pl. Ans. to Int. 21) despite the fact that at the time of the opening, Headrick had only a year of experience with the company as a clerk, and no prior work experience as a benefits supervisor or as a manager (see Dep. of Headrick 178-80).

The 1992 Benefits Supervisor position was ultimately awarded to Steven Peters. (See Pl.'s Ans. to Int. 21.) While plaintiff

--------

[23] This specific incident of failure to promote, having occurred in 1992, is long since time barred for specific recovery to be granted by this court. The theory behind the time bars is to "protect employers from the burden of having to defend against claims arising out of remote managerial decisions." Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 800 (11th Cir. 1988).
    Furthermore, the Plaintiff cannot be alleging a failure to promote from 1992 on the theory of a continuing violation. "Discrete discriminatory acts such as . . . failure to promote are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Shields v. Fort James Corp., 305 F.3d 1280, 1281 (11th Cir. 2002) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

[24] According to the Plaintiff, "in 1992 Christy McKee, my supervisor, left SCI and the benefit administrators position became available." (Pl. Ans. to Int. 21.)

asserts as an essential part of her *prima facie* case that she had

"as much benefits background" as alleged comparator Steve Peters,

(see *id.* at 245) the facts do not support plaintiff's unfounded

belief.  At the time of Peters's hire to the Benefits Department,

he had been employed with SCI for eleven years and had handled

benefits at SCI previously.  (See Peters Aff. ¶ 2; Bates Aff. ¶

12.)  In fact, Peters had handled benefits at SCI before SCI's

first Benefits Administrator (Richard Hodges) was appointed in

March of 1985.  (See Peters Aff. ¶ 4.)  Peters had been

responsible for most aspects of employee benefits until 1985 and

was administrator of SCI's 401(k) plan, stock purchase plan, and

pension plan at the time he was selected as Benefits Supervisor.

(See *id.* at ¶ 1.)

These facts demonstrate to the court that Headrick was not

discriminatorily denied the promotion to Benefits Manager in

1992; plaintiff would be unable to make a *prima facie* case based

on this employment decision, even were it not time barred.

Simply put, the Plaintiff has not shown to the court that in 1992

she was equally as qualified for the Benefits Supervisor position

as Steven Peters.  The facts overwhelmingly indicate that Peters

had more experience and general knowledge required in the

position than Headrick.  Plaintiff's mistaken belief that she had

"as much benefits background" as Peters is not sufficient to

create a genuine issue of material fact to defeat the motion for

summary judgment on this second element of the *prima facie* case.
See <u>Ben-Kotel v. Howard Univ.</u>, 319 F.3d 532, 535-36 (D.C. Cir.
2003) (observing that a witness' mistaken thought concerning a
factual point was insufficient to create a factual dispute in the
face of overwhelming documentary evidence indicating to the
contrary); <u>see also</u> <u>Stewart v. RCA Corp.</u>, 790 F.2d 624, 628 (7th
Cir. 1986) (stating that "a court might be able to find a witness
incredible as a matter of law . . . if the current story were
irrefutably contradicted by documentary evidence"). For these
reasons, plaintiff fails in proving a *prima facie* case and her
claim for failure to promote in relation to the 1992 Benefits
Supervisor position is, for this separate reason, denied.

Further, even if this court is somehow in error and not only
is the claim not time barred, but the qualifications of Headrick
and Peters could be construed as being at least marginally equal
in 1992, this court is not in the business of second-guessing an
employer's decision to choose the most qualified employee for a
job opening. In fact, the requirement of the plaintiff is to
show to this court that the disparity in qualifications is "so
apparent as virtually to jump off the page and slap you in the
face." <u>Hall v. Ala. Ass'n of Sch. Bds.</u>, 326 F.3d 1157, 1167-68
(11th Cir. 2003). Such is certainly not the situation in the

instant case.[25]

In an effort to exhaust all possible contingencies of the Plaintiff's failure to promote charge of gender discrimination, this court feels compelled to examine the history of the position of Benefits Supervisor.  If statistically the position has been held by men while equally qualified women were denied the promotion, perhaps the Plaintiff may still make a claim for failure to promote gender discrimination.[26]  However, the statistics also belie Headrick's claim of gender discrimination with regard to the Benefits Supervisor position.  In the thirteen years that Headrick was employed with SCI, the Benefits Supervisor position was held my a woman for all but four of those thirteen years.  (See Dep. of Headrick 182-83; Bates Aff. ¶ 16.)  Under such circumstances, and in the absence of other evidence on this issue, there can be no finding of gender discrimination with the Benefits Supervisor position as a matter of law.  See Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989) (restating the rule that in order to avoid summary judgment, a plaintiff

---

[25] Even the Plaintiff herself could not explain in her deposition why she held the belief that she was denied the Benefits Manager position in 1992 because of gender discrimination.  When asked whether she thought instances of selection to the Benefits Department were discriminatory, the Plaintiff responded "I don't know."  (Dep. of Headrick 183.)

[26] In cases of gender discrimination, courts have consistently held that an examination of statistics "often tell much and the courts listen."  Burns v. Thiokol Chem. Corp., 483 F.2d 300, 305 (5th Cir. 1973.)

must present significantly probative evidence of discrimination).

### ii. The Human Resources Managerial Positions

Plaintiff alleges three additional instances of being denied promotions into the Human Resource Managerial arena. (See Pl.'s Brief in Opp. to Summ. J. at 8-11.)  These additional claims are puzzling to the court, in the sense that the Plaintiff admits in her deposition that she *was* offered the positions in the SCI plant that are the basis of her complaint, but on each occasion she declined the offer to transfer.[27]  (See Dep. of Headrick 106.)  Nevertheless, this court will consider the Plaintiff's complaint as brought, despite the fact that there has been no *actual* failure to promote[28] and despite the additional consideration that these specific instances of alleged gender

---

[27] Plaintiff was asked if she had ever turned down the opportunity to do Human Resource work in the plants of SCI, to which she answered that she had indeed turned down such opportunities.  (See Dep. of Headrick 106.)  As such, the court is puzzled as to why the Plaintiff has termed her complaint to be gender discriminatory failure to promote with regard to the human resource managerial positions.  The very elements of the *prima facie* case for such a claim the Plaintiff cannot make, since she was indeed offered the job.  Plaintiff would have been wiser to include these instances only in her claim for wage discrimination, though this court's ultimate decision is the same regardless of under which count the instances are brought to the court's attention.

[28] As outlined in part (a) above, the Plaintiff fails to meet her *prima facie* case because she cannot show that she was denied any promotion, having been offered those very positions.

discrimination are time barred.[29]  See <u>United Airlines v. Evans</u>, 431 U.S. 553, 557-59 (1997) (noting that discrete acts, such as failure to promote, are not candidates for use of the continuing violation theory).

In September of 1998, Headrick claims that while she was offered a position as a Human Resources Representative at Plant 60, she was denied a promotion in the sense that the position change did not include a raise.  (<u>See</u> Dep. of Headrick 184-87.) She therefore decided to decline the position in its entirety, because she thought the absence of a raise was gender discrimination.  Another female employee was then placed in the job that Headrick turned down.  (<u>See</u> <u>id.</u> at 186-88.)

In considering the Plaintiff's *prima facie* case with regard to this position, the evidence bears out that the factual basis of Headrick's own complaint is flawed.  The job opening in September of 1998 was to replace Jim Oakes, a Supervisor and assistant to the Manager of Level 1.  (Peters Aff. ¶ ¶ 9, 10.) The Plaintiff mistakenly believes that the opening was for Manager Level 1, a higher level job with a higher pay rate.[30]

---

[29] The continuing violation theory allows otherwise time-barred employment claims to be brought where the alleged practice constitutes a continuing violation.  <u>See</u> <u>Calloway v. Partners Nat'l Health Plans</u>, 986 F.2d 446, 448 (11th Cir. 1993).  However, discrete acts are not candidates for use of the continuing violation theory.

[30] No jury could reasonably hold in favor of the Plaintiff
(continued...)

The fact that she was offered the position without an increase in pay is in fact consistent with the job offered.  Further, even if the job opening had been for Manager Level I, it was the business practice of SCI at the time of the alleged discrimination to withhold pay increases from employees moved to a new position until the employee proved to management that s/he could efficiently perform in the new position.[31]  (See Peters Aff. ¶ 12; Henry Aff. ¶ 8; Bates Aff. ¶ 19.)

For all of the foregoing reasons, the failure of SCI to "promote" Headrick with an attendant pay increase in 1998 is not evidence of gender discrimination in the form of failure to promote because plaintiff cannot prove her *prima facie* case. Headrick has not shown to this court that she was denied a promotion, nor has she given any reason for this court to consider this time barred incident in her gender discrimination

---

[30] (...continued)
based on the  Plaintiff's beliefs that are demonstrably untrue. See generally Ben-Kotel, 319 F.3d at 535-36 (holding that a witness' mistaken belief concerning a factual issue was insufficient to create a dispute where overwhelming evidence indicated the opposite result).

[31] The outward statement of this company policy is supported by the undisputed facts of this case.  When Peters was promoted to the position of charge for three plants, he was not given an increase in salary until several months later.  (See Peters Aff. ¶ 9.)  When Oakes was moved into Human Resources, he was forced to take a demotion in salary.  (See Oakes Aff. ¶ 2.)

claim.[32]

The next incident of alleged failure to promote occurred in November of 1998, after the Plaintiff was offered and this time accepted a position as interim Human Resources Supervisor at Plant 60. (See Dep. of Headrick 205-07.) Her duties in this interim capacity involved transitioning employees' benefits into the SCI system. (See Henry Aff. ¶ 7; Peters Aff. ¶ 6; Bates Aff. ¶ 9.) However, when Headrick was offered this position on a permanent basis, she declined to accept the job. (See Dep. of Headrick 113-15, 201, 207-08.) Plaintiff states in her deposition that she declined to accept the permanent position because the offer did not include a promotion nor a raise in pay.[33] (See id. at 207-08; see also Pl.'s Brief in Opp. to Summ. J. at 8.) She considered the offer of the position without an attendant increase in pay to be gender discrimination; it is on this belief that the Plaintiff brings this incident to the attention of the court as circumstantial evidence of gender

_____

[32] The court notes once again that this is a claim that more properly should have been brought in the claim for disparate treatment by way of wage discrimination towards women. While it well could be that Claudette McRae was equally as qualified as Headrick to take the position, the fact that Headrick was initially offered the position destroys any claim she may have had for failure to promote.

[33] The court notes that at least marginally, the Plaintiff was aware that this move, if taken, would be considered a lateral move. (See Dep. of Headrick 208.) As such, the Plaintiff would be again unable to make a prima facie case of failure to promote since there was no actual promotion being considered.

discrimination.

In support of her contention that she was denied a promotion in accordance with the proof required in the *prima facie* case, the Plaintiff notes that a male employee, Jim Oakes, was given the position when she refused it along with a raise in salary and change in title to Supervisor. (See Pl.'s Ans. to Int. 21; Dep. of Headrick 209-10.)  However again it seems apparent to the court that the Plaintiff holds a mistaken belief as to the position acquired by Oakes around the time that she turned down a position.  The evidence shows that Oakes was hired on as a Supervisor and was not promoted to Manager until 18 months after he was given the new position. (See Oakes Aff. ¶ 4.)  Even plaintiff recognizes her error in her answer to the interrogatory when she states in her later deposition that Oakes took the job in the position of Supervisor, not Manager.  (See Dep. of Headrick 194.)  Headrick nevertheless continues to emphatically assert in her deposition that regardless of title, Oakes was given a substantial increase in pay when he accepted the job that she had declined. (See id. at 199-200.)  Again, Headrick holds a mistaken belief that cannot defeat defendant's motion for summary judgment.[34]  The overwhelming facts indicate that the only salary

---

[34] As noted earlier, a plaintiff's mistaken belief as to a material fact is not sufficient grounds upon which to defeat a defendant's motion for summary judgment.  See Ben Kotel, 319 F.3d at 536.

27

increase Oakes received occurred several months after he changed positions within SCI.  (See Bates Aff. ¶ 21.)  It is also interesting to note that Oakes' pay increase at the time was 10.12%, while Headrick's pay increase was only slightly less at 9.44%.  (See id.)

Simply put, Headrick's contention that "the defendant had a long history of moving women into vacant positions and giving them lower pay and non-managerial titles, even though they perform[ed] the same duties as the men who have held the positions" (see Pl.'s Reply Brief at ¶ 20) is unfounded and unsupported by evidence.  Plaintiff is able to put forth no substantiated evidence that "when male employees were moved into top HR positions with SCI they were promoted to the level of Manager and given attendant raises . . . this was not the case for female employees."  (Id. at 12; Dep. of Headrick 164-65.)  While plaintiff may verily have believed that men were given changes in title with increases in pay, the facts simply do not support the plaintiff's belief.  Since a plaintiff's mistaken belief is insufficient to prevent a grant of summary judgment and since the Plaintiff was offered the very jobs here in question, plaintiff's charge of gender discrimination for failure to promote is due to be denied.

### iii. Merger Positions

Finally, plaintiff Headrick alleges that gender

discrimination in the form of failure to promote is apparent from the fact that "Sanmina-SCI found positions for males affected by the merger, but did not do the same for Ms. Headrick." (Pl.'s Brief in Opp. to Summ. J. at 4; see also Pl.'s Ans. to Int. 20.) Plaintiff points to two promotions at Plants 1 and 27/30 that were unannounced for which Headrick was allegedly not given the opportunity to apply, but for which she was qualified. (See Pl.'s Brief ¶ 15.) In early 2001, plaintiff alleges that she was not promoted to take the position at Plant 27/30, previously held by Jim Oakes. (Dep. of Headrick 213-14.) Instead, Tom Avery was promoted to the position. (Id. at 275-76.) Management indicates that while Headrick was indeed considered for the job, it was concluded that Headrick had no real interest in moving into general human resource work, since the Plaintiff had previously been offered the same job and turned it down.[35] (Henry Aff. ¶ 11; Dep. of Headrick 106.) Furthermore, it is clear that while management considered Headrick for the opening, plaintiff was needed at this time of the imminent merger with Sanmina to assist in the integration of the benefits program for SCI and Sanmina.[36]

---

[35] Henry was therefore of the opinion that Plaintiff avoided new responsibilities in general and "grunt HR work in the plants" in particular. (Id.)

[36] In fact, the Plaintiff recognizes that the vacancy at Plants 27/30 occurred at "about the time the crunch of putting [Sanmina and SCI] together would have hit." (Dep. of Headrick 240.)

(See Dep. of Headrick 220-21.)

Nevertheless, plaintiff believes she should have been elevated to this position, and so it is necessary for this court to examine whether Headrick has made a *prima facie* case of failure to promote at the time of the merger.  Taking the first three elements of the failure to promote *prima facie* case as satisfied, the court examines whether Avery was equally or less qualified than Headrick.  The plaintiff testified that Avery hadn't been with SCI as long as she had been and that Avery had never been a supervisor while plaintiff had served in a supervisory capacity.  (Pl.'s Reply Brief at 10; Dep. of Headrick 242; Pl.'s Resp. to Int. 17.)  However, there does not seem to be much question that Avery was indeed qualified to perform the job in question at Plant 27/30.  Avery had a lifetime of supervisory experience in the Army where he performed work similar to that required in the plants.  (See Henry Aff. ¶ 12; see also Dep. of Headrick 151-52.)  Avery had worked with SCI as a professional recruiter since 1998. (See Henry Aff. ¶ 12.)

These qualifications of Avery, combined with the fact that the Plaintiff had previously turned down the very job here being considered, prevent the Plaintiff from establishing a *prima facie* case of failure to promote gender discrimination as related to the failure of Sanmina-SCI to promote her in early 2001.  And even if Headrick and Avery could be construed as marginally equal

for the job vacancy, this court is not in the business of second-guessing an employer's decision to choose the most qualified employee for a job opening.  See Hall, 326 F.3d at 1167-68.

The second merger position that Headrick claims she was denied as a result of gender discrimination was one of Human Resources generalist, actually given to Steve Peters at Plant 1. (See Dep. of Headrick 246.)  However, it is clear to this court that the Plaintiff fails to meet her *prima facie* burden of showing that Peters was equally or less qualified than herself. See Batey, 24 F.3d at 1334 n. 11.  While Peters was initially hired by SCI with twelve years of human resource experience to the position of professional recruiter, (see Peters Aff. ¶¶ 1-2) Plaintiff Headrick was initially hired without any experience as a manager of benefits (see Dep. of Headrick 18-20).  While Headrick was promoted several times with the company, she never reached the position of generalist, and instead focused her career on the specialized area of insured employee benefits.[37] (See Bates Aff. ¶ 9.)  Though Headrick was presented with opportunities to move out of specialized work into more generalized work, she always declined these opportunities.  (See id. at ¶ 8; Dep. of Headrick 106.)  While Peters also worked as a

---

[37] A generalist position at SCI was paid at a higher rate than a specialist job at SCI, because generalists were responsible for all phases of employment practices and usually worked in a plant.  (See Bates Aff. ¶ 5.)

specialist, his skilled recruiting talent made him as valuable to the company as a generalist.  (See id. at ¶ 5.)  Headrick had no additional skills raising her worth to the company beyond that of a specialist. And while at one point in their careers with SCI both Peters and Headrick held the title of Supervisor of Benefits,(see Peters Aff. ¶ 1; Bates Aff. ¶ 8), Peters quickly advanced to Human Resources Manager (see Peters Aff. ¶ 1) while Headrick refused opportunities to move into a generalist job (see Bates Aff. ¶ ¶ 5,8).

This court finds that the Plaintiff fails to make a *prima facie* case with respect to this merger position.  Plaintiff's unfounded "belief" that she was denied the position at Plant 1 is not evidence of discrimination, and therefore is not sufficient to defeat defendant's motion for summary judgment. See Turlington v. Atlanta Gas Co., 135 F.3d 1428 (11th Cir. 1998).  Therefore, Sanmina-SCI's motion for summary judgment is due to be granted with regard to this claim.

### b.  Sanmina-SCI's Legitimate, Non-discriminatory Reasons for the Failure to Promote Plaintiff and the Plaintiff's Failure to Establish Pretext

Even if this court is in error and the Plaintiff can be said to have made a *prima facie* case of failure to promote gender discrimination, Sanmina-SCI has articulated legitimate, non-discriminatory reasons for the failure to promote Headrick, and therefore the burden shifts back to the Plaintiff to show that

the legitimate, non-discriminatory reason operated only as a pretext for gender discrimination.[38]  See McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973).  And even if there were evidence that plaintiff and those promoted instead of her were relatively equal in skill and experience, that would still not provide evidence of discrimination.  Case law consistently asserts that "if an employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail."  Smith v. Horner, 839 F.2d 1530, 1538 (11th Cir. 1988) (citing Clark v. Huntsville Bd. of Educ., 717 F.2d 525, 527 (11th Cir. 1983)).

Furthermore, a plaintiff cannot prove pretext merely by showing that she is more qualified than her comparator.  See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000).  Instead, a plaintiff must exhibit that the defendant indeed acted with an intent to illegally discriminate.  See id., citing Alexander, 207 F.3d at 1339.  As this court noted before, the plaintiff must produce evidence such that the disparity "jump[s] off the page and slap[s] you in the face."  Hall, 326 F.3d at 1167-68.  Plaintiff has certainly produced no evidence which

_____

[38] Once the plaintiff has made a *prima facie* case of discrimination, the employer must articulate some legitimate, nondiscriminatory reason for the employee's rejection.  See Alexander, 207 F.3d at 1339.  Defendant's reasons for the failure to promote Headrick have been discussed within the consideration of the *prima facie* case, and the court will not discuss them in detail again.

slaps this court in the face to say that plaintiff had been discriminatorily denied promotions due to her gender at Sanmina-SCI.

Accordingly, defendant's motion for summary judgment is due to be granted with respect to Plaintiff's Title VII claim for gender discrimination in the form of failure to promote.

### 2.  Wage Discrimination

#### a.  The Plaintiff's Failure to Establish a *Prima Facie* Case of a Discriminatory Wage Scheme at Sanmina-SCI

Plaintiff asserts a claim for Title VII gender discrimination on the theory of salary discrimination, i.e. that she as a female was consistently paid a lower salary than similarly-situated male employees.[39]  Title VII provides that an

---

[39] While individual one-time claims of wage disparities may be time barred, the court notes that the Eleventh Circuit specifically allows such claims to be brought where the practice constitutes a continuing violation. See Calloway, 986 F.2d at 448.  "When the claim is one for discriminatory wages, the violation exists every single day the employee works."  Id. at 449.  The court concluded that discriminatory wage payments constitute a continuing violation under Title VII.  See id.
Note that this principle may be called into question by the Supreme Court's recent decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), in which the Court held that a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice, i.e. a continuing violation.  In arriving at this conclusion, the Supreme Court noted that for a discrete retaliatory or discriminatory act, the statute of limitations begins to run on the date the act occurred.  See id. at 110.  Therefore, "discrete discriminatory acts are not actionable if time barred, even if they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id. at 113.  The
(continued...)

employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1) (1994) (emphasis added).  A plaintiff attempting to prove that s/he has been subjected to a disparate pay scheme under Title VII through circumstantial evidence must first establish a *prima facie* case of gender discrimination.[40]  See generally McDonnell Douglas, 411 U.S. 792; see also Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1528 (11th Cir. 1992).  A plaintiff establishes a *prima facie* case of wage discrimination "by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males."  Id. at 1529.  Broken into elements, a disparate treatment *prima facie* case requires proof that: (1) the employee belongs to a protected group; (2) the employee has been the subject of an adverse employment action;

---

[39](...continued)
Supreme Court then distinguishes hostile work environment claims, and only hostile work environment claims, from discrete acts and holds that the cumulative effect of such claims may be based on a continuing violation theory.  See id. at 115-121.
    This court, however, relies on Eleventh Circuit case law which has not been called into question as indicative that the Supreme Court decision does not declare a hostile work environment claim to be the only situation in which a continuing violation theory may be used.

[40] While a Title VII plaintiff may prove her case by direct or circumstantial evidence, Headrick relies on circumstantial evidence upon which to lay all of her Title VII claims.  (See Pl.'s Brief in Opp. to Summ. J. 7.)

(3) the employee and a similarly situated non-protected person received dissimilar treatment; and (4) sufficient evidence exists to infer a causal connection between gender and disparate treatment.   See Blalock v. Dale County Bd. of Educ., 84 F.Supp.2d 1291, 1308 (M.D. Ala. 1999), citing Bell v. Eufaula City Bd. of Educ., 995 F.Supp. 1377, 1385 (M.D. Ala. 1998).

That element one and arguably element two of the Plaintiff's *prima facie* case have been met is not in dispute.[41]   However, this is where the agreement ends.   The question remains as to whether or not the Plaintiff has met her burden[42] of showing that a similarly situated male employee has received dissimilar treatment (here, a higher salary) from herself.[43]   In the

---

[41] Defendant SCI would likely dispute the fact that Headrick has been the subject of an adverse employment action.   It was not unique that employees with SCI be dissatisfied with their rates of pay.   (See Bates Aff. ¶ 14.)   In fact, by reputation and practice, SCI was known for holding salaries at the low end of the labor market.   (See id.)   Nevertheless, since this fact is not determinative to the decision reached in this case, the point that plaintiff has arguably met element two of her *prima facie* case will not here be argued.

[42] See Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999.)   See also Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1184-85 (11th Cir. 1984) (stating that the Plaintiff must show that the comparator was "nearly identical" to plaintiff).

[43] See Smith v. Stratus Computer, Inc., 40 F.3d 11, 16-7 (1st Cir. 1994) for the contention that the Plaintiff bears the burden of showing that she was treated differently from similarly situated comparators in a disparate treatment case.   That is, the burden is not on the employer to show that the position of the alleged comparator is in fact dissimilar.   See also Maniccia, 171 F.3d at 1368.

comparator analysis, a plaintiff may deem a co-employee as similarly situated where the comparator has "very similar job-related characteristics and [is] in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." <u>MacPherson v. Univ. of Montevallo</u>, 922 F.2d 766, 774 (11th Cir. 1991) (applying the similarly situated test in an age discrimination case).  For example, pertinent to the analysis is whether the type of duties performed at a job description are the same type of tasks performed by alleged comparators. <u>See Miranda</u>, 975 F.2d at 1529 (agreeing with the trial court that a *prima facie* case of gender discrimination as evidenced through salary discrepancies can be made by a comparison of duties performed and salaries earned amongst employees with similar job titles); <u>see also Silvera v. Orange County Sch. Bd.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001) (applying the similarly situated test in a race discrimination discipline case and stating that "it is necessary to consider whether the employees are involved in . . . the same or similar conduct . . .").

Plaintiff Headrick fails to meet the burden of showing that she was similarly situated to her alleged comparator, Steven Peters.  Although Headrick claims that she most identified with Steve Peters (<u>see</u> Dep. of Headrick 98-9), this fact alone does

not make Peters a viable comparator.[44]  Plaintiff may well have

"identified with" Peters as a co-employee, but she has been

unable to substantiate that Peters performed similar job duties

or was otherwise similarly situated to the Plaintiff to the

extent necessary to successfully make out this essential element

of her *prima facie* case.[45]

Even a cursory look at the facts of this case indicates that

the job duties of alleged comparator Peters with the Plaintiff's

job titles and job duties would not lead to a conclusion that the

two individuals meet the legal standard for being similarly

situated such that they should earn a comparable wage.  For

example, while Peters was initially hired by SCI with twelve

years of human resource experience to the position of

professional recruiter, (see Peters Aff. ¶¶ 1-2) Plaintiff

Headrick was initially hired without any experience as a manager

of benefits (see Dep. of Headrick 18-20).  As a result of the

varied experiences of the two new hires, Peters began his

---

[44] Plaintiff testified that her salary was less than the
salaries of her male counterparts.  She stated in her deposition
that she "identified mostly with Steve [Peters] and generally ...
made ... 50 percent less than he did."  (Dep. of Headrick 98-9.)

[45] This court notes its duty, in considering a motion for
summary judgment, to draw all justifiable inferences in favor of
the non-movant.  See Liberty Lobby, 477 U.S. at 255.
Nevertheless, the non-movant need not be given the benefit of
every inference but only of every *reasonable* inference.  See
Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir.
1988).

employment with SCI as a professional recruiter at the salary of $36,000, (see Peters Aff. ¶ ¶ 1,4) while Headrick was hired as an entry level benefits clerk/insurance clerk at approximately $13,520 per year (see Bates Aff. ¶ 12; see also Dep. of Headrick 19-20).  In fact, Headrick indeed recognized in her deposition that part of the difference between her salary and the salary paid to Peters occurred because Peters had been with the employer longer than Headrick had been with SCI.[46]  (See id. at 99-100.) She further recognized in her deposition that differences in background could justify salary differentials.  (See id. at 153-54.)

These initial variances in job tasks, titles, and wages continued to be accentuated throughout Headrick's and Peters's employment with SCI.  While Headrick was promoted several times with the company, she never reached the position of generalist, and instead focused her career on the specialized area of insured employee benefits.[47]  (See Bates Aff. ¶ 9.)  Though Headrick was presented with opportunities to move out of specialized work into

_____

[46] While Headrick mistakenly believed that Peters had been with the company only a year longer than herself, the facts show that Peters had in fact been with SCI eight years prior to the time Headrick began her employment with SCI.  (See Bates Aff. ¶ ¶ 8, 11.)

[47] As noted earlier, a generalist position at SCI was paid at a higher rate than a specialist job at SCI, because generalists were responsible for all phases of employment practices and usually worked in a plant.  (See id.)

more generalized work, she always declined these opportunities.
(See id. at ¶ 8.)  While Peters also worked as a specialist, his
skilled recruiting talent made him as valuable to the company as
a generalist.  (See id. at ¶ 5.)  Headrick had no additional
skills raising her worth to the company beyond that of a
specialist.  (See generally Bates Aff.)  While at one point in
their careers with SCI both Peters and Headrick held the title of
Supervisor of Benefits, (see Peters Aff. ¶ 1; see also Bates Aff.
¶ 8), Peters quickly advanced to Human Resources Manager (see
Peters Aff. ¶ 1) while Headrick refused opportunities to move
into a generalist job (see Bates Aff. ¶ ¶ 5,8).

        Continued examination of the facts available in this case
indicate that the job tasks of alleged comparator Scruggs, for
purposes of the Title VII wage discrimination claim, do not lead
to the logical conclusion that Scruggs and Headrick were
similarly situated to the extent necessary to prove this element
of the prima facie case.  Scruggs, like Peters, was hired as a
professional recruiter for SCI at an initial salary of $35,000.
(See Peters Aff. ¶ 3; see also Bates Aff. ¶ 10.)  During his
tenure at SCI, Scruggs worked as a professional recruiter for 14
years, until the time he was promoted to Supervisor.  (See Bates
Aff. ¶ 10.)  In these positions, Scruggs recruited professional
employees to SCI and performed generalist human resource work.
(See id. at ¶ 10.)  As with Peters, Scruggs is not a viable

comparator to Headrick for purposes of the similarly situated test because they did not have similar job duties nor hold the same job title.  Therefore, Headrick fails to make a *prima facie* case of disparate treatment and her claim under Title VII must fail as it relates to wage discrimination using Kirk Scruggs as a comparator.

Finally, this court notes that while Peters and Scruggs may have been co-employees whom Headrick identified with and believed to be similarly situated to herself, the Plaintiff's opinion alone is not sufficient to satisfy this element of the *prima facie* case.  The fact that the plaintiff states in her own deposition that she cannot recall any male employee who was employed at SCI at the time she was who was similarly situated to herself and received more compensation than she did is very telling in this case.  (See Dep. of Headrick 48.)  Plaintiff's mere assumptions that there were Supervisors other than Peters and Scruggs who were compensated at a higher rate than she was is insufficient grounds upon which to base this necessary element of the Plaintiff's *prima facie* case.

Because plaintiff has failed to make a *prima facie* case of wage discrimination, Count II of the complaint is entitled to summary judgment.

### b.  The Defendant's Articulated Reasons

Since Plaintiff Headrick is unable to make a *prima facie*

case of disparate treatment wage discrimination, her Title VII
claim for discrepancies in salary must be denied.  The defendant
is accordingly not required to meet even the "exceedingly light"
burden of production in rebutting the *prima facie* case, since no
*prima facie* case has been made.  <u>See</u> <u>Miranda</u>, 975 F.2d at 1529,
citing <u>Perryman v. Johnson Products, Inc.</u>, 698 F.2d 1138, 1141
(11th Cir. 1983).  Nevertheless, it is noteworthy to mention that
even if this court is in error and Peters and Scruggs may viably
be used as Headrick's comparators for Title VII purposes, the
Plaintiff's claim of gender discrimination cannot survive
defendant's motion for summary judgment because Sanmina-SCI has
indeed produced legitimate, non-discriminatory reasons for any
actual disparity in pay.  <u>See</u> <u>Perryman</u>, 698 F.2d at 1142.  That
disparity in pay has been articulated by the defendant to be the
result of the comparators' experience, training, and ability.[48]
(<u>See</u> Def.'s Mem. in Support of Summ. J. ¶ 44.)  Since this
assertion by Sanmina-SCI is readily supported by the facts of the
case and since Eleventh Circuit case law consistently holds that

---

[48] The Supreme Court has held that the language of the
Bennett Amendment suggests an intention to incorporate into Title
VII the affirmative defenses recognized under the Equal Pay Act.
<u>See</u> <u>County of Washington v. Gunther</u>, 452 U.S. 161, 168-70 (1981)
(noting that the purpose of the Bennett Amendment must have been
designed to resolve potential conflicts between the Equal Pay Act
and Title VII).  Those affirmative defenses authorize employers
to differentiate in salary on the basis of an employee's
seniority status, merit, quantity or quality of production, or
any other factor other than sex.  <u>See</u> <u>id.</u> at 170.

such considerations properly allow pay disparity, Sanmina-SCI has produced legitimate, non-discriminatory reasons for paying Headrick differently from her alleged comparators.[49]

### c. The Plaintiff's Failure to Establish Pretext

The Plaintiff has not successfully rebutted the employer's articulated legitimate, non-discriminatory reasons for paying Headrick a lower salary than Peters and Scruggs. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) (stating that the ultimate burden of persuasion lies with the plaintiff in Title VII cases and therefore "if the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with

---

[49] The Eleventh Circuit consistently holds that differences in pay between male and female employees are justified where the difference is based on prior work experience, skills, and longevity. See, e.g., Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995) (noting that where an employer is permitted to differentiate salaries on any factor other than sex, such factors may include unique characteristics of the same job, an individual's experience, training, or ability, and other special exigent circumstances); Steger v. Gen. Elec. Co., 318 F.3d 1066, 1076 (11th Cir. 2003) (holding that a salary scheme designed to meet the special exigent circumstances of the business was justified as an affirmative defense to wage discrimination and noting that other justifications for the disparity would include the individual employee's experience, skill, or training); see also Blount v. Alabama Coop. Extension Serv., 869 F.Supp. 1543, 1551 (M.D. Ala. 1994) (first articulating that the burden of the defendant in a Title VII wage discrimination case is one of production and not persuasion, the court finds that experience and years of employment are legitimate nondiscriminatory reasons for the difference in pay between employees).

specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination"). That is, in order for Headrick survive summary judgment at this stage, she must show that the salary differences were intended to have an illegal discriminatory effect and that the defendant followed the practice because of the alleged discriminatory result. See Blount, 869 F.Supp. at 1551; see also Brown v. Am. Honda Motor Corp., 939 F.2d 946, 935 (11th Cir. 1991) (stating that "it is not sufficient to show that the defendant was aware that the particular practice would have a discriminatory impact. Instead, the plaintiff must show that the defendant chose the policy for precisely this [discriminatory] purpose"). Furthermore, the court cannot substitute its own judgment for that of the decisions made by employers in the course of their business. See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). That is, if the employer appears to have a salary scheme based on a factor other than gender, this court cannot strike down that scheme as long as it is not illegal.

Plaintiff Headrick's deposition and attached evidence are ineffectual to show that Sanmina-SCI valued experience and longevity with the company as a pretext for discriminating against female employees. While Headrick names other female employees and claims that they were not paid or promoted at the level they were so entitled, her argument lies only in her own

observations, conjecture, and conclusions, and not in actual, verifiable evidence.  (See generally Pl.'s Brief in Opp. to Def.'s Mem. for Summ. J.)  This is an insufficient basis upon which a plaintiff may defeat a defendant's motion for summary judgment.  See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995) (explaining that summary judgment cannot be granted where plaintiff makes only general assertions which do not reveal detailed and precise facts); see also Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) (cautioning a plaintiff that conclusory allegations of discrimination are not sufficient to raise an inference of pretext where a defendant has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions).

Because Plaintiff has failed to put forth a *prima facie* case of comparators and has failed to show pretext, defendant's motion for summary judgment is due to be granted with respect to Plaintiff's Title VII claim for wage discrimination.

### 3.  The Reduction in Force Post Merger with Sanmina

The Plaintiff's principal claim for disparate treatment seems to arise not from disparities in pay, but rather from the fact that she was terminated by Sanmina-SCI as part of a reduction in force.[50]  The Plaintiff believes that this was the

---

[50] Plaintiff's complaint states that "Sanmina-SCI found positions for males affected by the merger, but did not do the
(continued...)

45

employer's final gender disparate act.   (See Compl. Count II.)

In her deposition, Headrick recognizes that her supervisors informed her that when the merger occurred, her "benefits job was going to be going away . . . there was going to be changes and within the new company they had a different structure for HR." (Dep. of Headrick 102.)   Nevertheless, plaintiff believes that the defendant's failure to find her a position in the merged company was the result of gender discrimination because "the Defendant created positions for male employees, and offered positions to make [sic] employees, affected by the merger." (Compl. ¶ 41.)   Plaintiff states that the two positions created for male employees were given to Tom Avery at Plants 27/30 and to Steve Peters at Plant 1.   (See Dep. of Headrick 275-76.)

For an alleged failure to promote due to a reduction in force, the plaintiff bears the ultimate burden of proving that her gender was the ultimate factor in the final decision-making process.   See Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1519 (11th Cir. 1990.)   Therefore, either by direct, circumstantial, or statistical evidence the Plaintiff must show that there is a genuine dispute of material fact of discriminatory intent.   See Carter, 870 F.2d at 581-82.

Plaintiff fails to present statistical evidence of the

---

[50](...continued)
same for Ms. Headrick."   (Compl. ¶ 36; 42-3.)

employer's intent to discriminate as related to the reduction in force.  While the Plaintiff summarily says that jobs were created for men while women were denied positions in the newly merged company, statistics belie that claim.[51]  Within the human resources department, six males were terminated as a result of the merger, and four females were terminated.  (See Bates Aff. ¶ 26.)  Nine males and twelve females had been working in the human resource department prior to the layoffs.  (See id. at 25.)  These bare statistics tell a story of women faring better in the layoffs than the men. Therefore, by an examination of statistics alone, the net effect of the reduction in force by the merged employer Sanmina-SCI has not been discriminatory.

Therefore, in order to survive summary judgment on this issue, plaintiff must now come forward with some circumstantial evidence of gender discrimination as related to the reduction in force.  Plaintiff is unable to meet this burden.  As stated earlier, Headrick must meet the elements of a prima facie case, that is that: (1) she is a member of a protected class; (2) she was terminated; (3) she was qualified for another position at the time of the termination; and (4) Sanmina-SCI intended to discriminate in failing to consider her for another position.  See Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068,

---

[51] In the area of discrimination, statistics are often relied upon by courts as telling indicators of whether or not actual discrimination has occurred.  See Burns, 483 F.2d at 305.

1073 (11th Cir. 1995).

That plaintiff meets elements one and two of the *prima facie* case is not in dispute.  Further, the defendant concedes the third point in its brief in support of the motion for summary judgment, and for this reason the court does not question whether Headrick was indeed qualified for available positions post merger with Sanmina Corporation.  (See Def.'s Mem. in Support of Summ. J. ¶ 94.)  This court only questions whether the Plaintiff has proven that Sanmina-SCI intended to discriminate against her by failing to maintain her position with the company post merger.

Plaintiff's evidence in support of proving the last element of the *prima facie* case is only that male employees were given positions post merger, while she was not.  (See Compl. ¶ ¶ 41-2.) The Plaintiff points only to the two positions previously discussed in section A(1)(a)(iii) herein.  The legitimacy of these positions and the proper promotions of Avery and Stevens to them has already been upheld by thus court.  The Plaintiff presents no new evidence that these positions evidenced a failure to promote nor has the plaintiff produced any new evidence that these positions effectuated a policy of disparate treatment against Headrick due to her gender.[52]

_____

[52] While the Plaintiff states in her deposition that she was qualified for the positions given to Avery and Peters post merger, she later switches course and says that the job she desired became available before the merger in November 2001.

(continued...)

Because the Plaintiff has advanced no evidence upon which this court could find that the defendant acted with discriminatory intent in failing to keep Headrick on at the time of the merger, plaintiff's claim for gender discrimination is due to be denied.

**B.  The Absence of Available Relief for the Plaintiff**

In the event that this court is in error, and the Plaintiff has proven a *prima facie* case of gender discrimination through failure to promote or disparate treatment, the Plaintiff would not be entitled to relief from this court.  The Plaintiff admitted during the course of her deposition that upon filing a charge of discrimination with the EEOC, she misappropriated confidential employee records from Sanmina-SCI and proceeded to forward those documents to the EEOC.  (See Dep. of Headrick 144-45.)  Plaintiff admitted that she did not have permission from her employer to remove those confidential files, though company policy forbids the removal of any company records from the

---

[52](...continued)
(See Dep. of Headrick 227, 238-40.)  Plaintiff believes that Avery was elevated to this position based on "a different standard for promoting males and females." (Id. at 242.) Plaintiff's evidence of discriminatory intent is simply that she should have gotten the job because she was qualified for the job and it was open.  (Id. at 243-44.)

Once again, the Plaintiff's perception of discrimination is not evidence before this court.  See Turlington, 135 F.2d at 1428.  Her subjective belief of disparate treatment, even if genuine, cannot be the basis for judicial relief without verifiable facts in the record.  See Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983).

premises.  (See id. at 133-34; 136-155.)

Because the Plaintiff so misappropriated company property from Sanmina-SCI, the employer is entitled to defend against plaintiff's Title VII claims for damages on the "after-acquired evidence rule."  See McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995).  The after-acquired evidence rule is predicated on the principle that compensation to restore the employee to the position she would have been in absent the discrimination is difficult to apply where there is after acquired evidence of wrongdoing that would have led to termination on legitimate grounds had the employer known about it.  See id. at 362.  Therefore, "the beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered."  Id. at 362.

Applied here, plaintiff's relief would be minimal since Sanmina-SCI seems to have discovered the misappropriation of the files at the time of plaintiff's filing of her charge with the EEOC.  Sanmina-SCI would have terminated Headrick had the company known that she had taken and misappropriated confidential records from the premises of the employer.  (See Dep. of Headrick 133-34.)

In summary, the court finds that no material issues of fact remain and that defendant Sanmina-SCI is entitled to judgment as

50

a matter of law as to all federal claims asserted by Plaintiff.

A separate final order will be entered.

DONE this _29th_ day of January, 2004.

SENIOR UNITED STATES DISTRICT JUDGE